Shauck, J.
Counsel for the relator do not insist that this writ should issue unless the act whose compulsory performance is sought is, bylaw, specially enjoined upon the defendant as a duty resulting from his office. Nor are they of the opinion that the act in question is enjoined by any express provision of the statutes which define the duties of the secretary of state as state supervisor of elections. They invoke the unchallenged rules of interpretation that statutes should be so construed as to give effect to the intention 'of the legislature, and so as to avoid absurd consequences and great inconvenience. The statute upon this subject should be so construed, if there is any occasion for construction.
Its evident object is to secure entire freedom in the exercise of the elective franchise and entire' accuracy in the ascertainment of the results of elections. That these purposes are intended is shown by the nature of the subject, the history of elections in the state just prior to this legislation, and the care taken to definé the duties imposed *388 upon all officers concerned in the conduct of elections.
Applying these rules of interpretation to the statute in question, counsel say: “The act, -in so far as it imposes upon the state supervisor of elections the duty of furnishing forms to his deputies, is imperative; its time limitations are directory. ’ ’ If this proposition were sound, it would not reach a conclusion favorable to the relator. If a public officer performs a duty in accordance with the directory provisions of a statute, mandamus will not lie to compel him to perform it in a different manner, or at another time. It is true that the provisions of a statute as to the time for the performance of an official act will not usually be regarded as imperative, if from the nature of the act and its relation to the purpose in view one time will answer as well as another. But the purpose of this act and some of its express provisions require that the time at which the chief supervisor shall furnish the form of ballot to the deputies be regarded as imperative. Section 15 of the act (vol. 90, p. 272), requires that the deputy supervisors shall let the printing of the ballot according to the form furnished by the chief supervisor, to ■ the lowest bidder upon ten day’s notice published not more than three times in two newspapers. Section 16 requires the deputy supervisors to deliver the ballots to the judges of the election, not Less than three days before the election. When to the time so required for the performance of the duties of the deputies there is added the time necessary for the printing of the ballots it becomes manifest that the defendant would .have been remiss in the performance of his duties if he had not furnished the form to the deputies before he received Barr’s *389 withdrawal, which was but twelve days before the election. .
Other provisions of the statute not only support this conclusion, but fix with reasonable certainty the time when the state supervisor shall furnish the form to the deputies. Section 9 provides that certificates of nomination shall be filed with him not less than thirty days before the election. Section 10, that all certificates of nomination shall be open to public inspection, and that objection thereto may be made in writing within five days after the filing thereof, his decision on such objection being final. The provisions of section 11, affecting this question are, in substance, that should any candidate die or decline, or should any certificate of nomination be insufficient, the vacancy may be filled or the certificate corrected; but the certificate of such nomination to fill a vacancy or to correct a former certificate must be filed twenty days before the election.
The statute contemplates no further time preliminary to the sending of the form of ballot to the deputy supervisors, for it provides for no further nominations, nor for other duties by him, except nominations that may be made after the tickets are printed, and for his duties with respect to nominations so made. When, therefore, the time allowed for filing of nominations to fill vacancies or to correct former certificates' has elapsed — that is, twenty days before the election — it is the imperative duty of the secretary to send the form of ballot to the deputy superisors. No discretion in this respect could be exercised by him in furtherance of the objects of the statute. It might be exercised to defeat it.
*390 But it is said that the form of ballot must represent the truth as to candidates, and that this form, though correct when sent, no longer meets that requirement, in view of Barr’s subsequent withdrawal. And in this connection we are asked to consider a. supposed form in which the names of candidates for presidential electors should be printed in the wrong ticket. The obvious and sufficient answer to all this is that such erroneous performance of a duty of this character would be no performance,, while its proper performance is the end of official duty.
Attention is called to the provisions of section 11, that, “a vacancy occurring after the printing of the ballots may be filled by filing the proper certificate with the secretary of state, at least ten days * * * prior to the election, and the name, office and party of the candidate so nominated shall be printed on adhesive slips or pasters bj^-the deputy state supervisors, which shall be delivered to the judges in each precinct, etc.” The information on which the deputy supervisors are to act in such case is to be furnished by the secretary of state in obedience to the requirement that “immediately upon the expiration of the time within which certificates of nomination may be filed with him, the secretary of state shall certify copies of all the certificates so filed to the deputy state supervisors.” Not only does the statute contain no provision requiring or authorizing the secretary of .state to give the direction sought by this petition, hut its express provisions for correcting’ tickets by means of adhesive slips after they are printed, where there are nominations to fill vacancies, indicate that, after a proper form of ballot is sent at the proper time, the deputy supervisors are to *391 proceed without interruption to have tickets printed according to such form. All the supervisors are charged with important and clearly defined duties with respect to the filling of vacancies. It is' not their duty to aid in the creation of vacancies that are not to be filled.
A sinister aspect of this case deserves enough notice to prevent an improper inference which might be drawn from our silence. Barr’s withdrawal according to its terms, was, “in order to prevent any complication or confusion that might result” from his name remaining on the ticket. The relator alleges ‘ ‘that it is the intention of the representatives of the Peoples’ party in said twelfth congressional district not to fill the vacancy occasioned by the withdrawal of said Barr. ” Such representatives are recognized by the statute and authorized to make nominations to fill vacancies. By the common understanding’ they are to aid in carrying out the purposes of their party as they were expressed in the convention at which Barr was nominated, and they were constituted such representatives. What confusion could result if Barr’s name should remain on the ticket, thus giving the electors an opportunity to vote for him if they desired to do so, we do not perceive. Nor do we know from what source the representatives of the party that nominated Barr derived authority to determine that there would be no candidate for elector, contrary to the declaraton of those whom they represent. Though there may be no mode of compelling such representatives to perform their duty, neither election officers nor courts should encourage their dereliction. In considering this aspect' of the case, it is important to remember that the *392 statute is designed to promote the purity of elections.
The defendant has fully and rightly performed his duty in the premises, and

The writ is refused.

Williams, C. J„, not sitting.